**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

INFO-HOLD, INC.,                                          :
                                                          :   CASE NO. 1:06-cv-00543-SJD
           Plaintiff,                        :
                                                          :
                v.                              :   JUDGE DLOTT
                                                          :
TRUSONIC, INC.,                                           :
                                                          :
                                                          :
           Defendant.                        :
                                                          :
                                                          :

**DEFENDANT'S MOTION TO COMPEL PLAINTIFF TO PRODUCE DOCUMENTS;
RENEWAL OF MOTION TO COMPEL PLAINTIFF TO PRODUCE DOCUMENTS
FROM THE FILES OF JOHN E. HOLMES, ESQ. AND
ROYLANCE ABRAMS BERDO & GOODMAN; AND
<u>MEMORANDUM IN SUPPORT</u>**

Defendant, Trusonic, Inc., by its undersigned counsel, and for the reasons set forth in the

accompanying Memorandum in Support:

      1)      moves for an Order compelling Plaintiff to produce documents in response to

certain of Trusonic's requests for production identified in the accompanying Memorandum in

Support; and

      2)      moves, and renews its Motion originally filed at Doc. #13 for an Order

compelling Plaintiff to produce all documents from the files of John E. Holmes, Esq. and

Roylance Abrams Berdo & Goodman, relating to:

            U.S. Patent Application Serial No. 07/999,592 ('592 application);

            U.S. Patent No. 5,870,461 ("'461 patent");

            U.S. Patent No. 5,920,616 ("'616 patent");

U.S. Patent No. 6,272,211 ("'211 patent");

U.S. Patent No. 6,687,352 ("'352 patent");

U.S. Patent No. 5,991,374; and

the applications for the above-listed patents,

to Trusonic, or alternatively, to the Court to *in camera* review in connection with identifying

additional evidence that persons associated with the filing and application of the '211, '352 and

'364 patents have engaged in inequitable conduct and fraud on the United States Patent and

Trademark Office by failing to disclose evidence of known prior art potentially material to

patentability of the claims in those patents.

A Certficate of Counsel Under Local Rule 37.2 accompanies this Motion (Exhibit N).


Respectfully submitted,


/s/  William E. Gallagher
William E. Gallagher
(Ohio Reg. No. 65474)
FROST BROWN TODD LLC
201 East Fifth Street
2200 PNC Center
Cincinnati, Ohio 45202
Telephone:    (513) 651-6800
Facsimile:    (513) 651-6981
Trial Attorney for Defendant


Of Counsel:

William S. Morriss
FROST BROWN TODD LLC
201 East Fifth Street
2200 PNC Center
Cincinnati, Ohio 45202
Telephone:    (513) 651-6800
Facsimile:    (513) 651-6981

## MEMORANDUM IN SUPPORT

This is a patent infringement case in which Plaintiff alleges infringement by Trusonic of

U.S. Patents Nos. 5,991,374 ('374 patent), 6,272,211 ('211 patent) and 6,687,352 ('352 patent).

The asserted patents claim devices and systems used for playing audio materials (such as music

or promotional messages) to telephone callers placed on hold, or alternatively, to persons present

on premises, for example, customers present in a retail store.  In its defense, Trusonic alleges,

*inter alia*, that it does not infringe the patent claims asserted; that the patent claims asserted are

invalid under the patent laws at 35 U.S.C. § 102, 103 and 112; and that the patents asserted are

unenforceable because persons associated with the filing and prosecution of the applications for

these patents engaged in inequitable conduct by, *inter alia*, failing to comply with their duties of

candor and good faith toward the United States Patent Office during prosecution.  *See* Trusonic's

First Amended Answer and Counterclaim (Doc. #48).

Under the Court's pretrial scheduling Order of January 17, 2007 (Doc. #12), fact

discovery closes in this case August 1, 2007.

## I.      MOTION TO COMPEL PRODUCTION OF DOCUMENTS

On November 20, 2006, Trusonic served Plaintiff with Defendant's First Combined Set

of Interrogatories and Requests for Production of Documents.  (Exhibit A.)  On December 29,

2006, Plaintiff served Trusonic with its corresponding Responses.  (Exhibit B.)

Plaintiff produced no documents in connection with its Responses.  Rather, the parties

delayed their respective document production while they engaged in attempts to negotiate terms

of a suitable protective order under which they would produce to each other documents they

deemed sensitive.  Ultimately, the parties could not reach agreement.  At Plaintiff's request, the

Court intervened informally, by directing the parties submit information concerning their

respective proposed draft protective orders, and the nature of their disagreement. (Email from S. Fairweather to Counsel, 5/11/07.) Trusonic submitted the information requested. (Email from W. Gallagher to Court 5/14/07). Plaintiff did not respond. The Court then entered a Protective Order on May 18, 2007 (Doc. No. 46).

At Trusonic's urging, Plaintiff then agreed that each party would deliver copies of their respective documents responsive to discovery requests, rather than requiring the other to arrange on-site inspection and copying of responsive documents at the premises of the producing party.

Thereafter, Trusonic produced to Plaintiff several CDs and a DVD, together containing over 40,000 pages of documents that appear to be responsive to Plaintiff's broad discovery requests, including many containing highly sensitive technical and commercial information. Additionally, Trusonic delivered to Plaintiff a current example of its accused audio player.

Plaintiff, on the other hand, produced a CD containing approximately 3,111 pages documents, with a cover memo identifying the Trusonic requests it was producing documents in response to: 7, 8, 18, 48, 50, 51 and 53. (Exhibit C.) Plaintiff did not produce *any* documents in response to the following additional 48 requests for production, contained in Trusonic's discovery request (Exhibit A):

| | | | | |
|---|---|---|---|---|
| 2c | 14b | 26 | 37 | 52 |
| 2d | 15b | 27 | 38 | 54 |
| 3d | 16c | 28 | 39 | 55 |
| 4c | 17 | 29 | 40 | |
| 5d | 19 | 30 | 41 | |
| 6c | 20 | 31 | 42 | |
| 6d | 21 | 32 | 43 | |
| 6e | 22 | 33 | 44 | |
| 9c | 23 | 34 | 45 | |
| 10b | 24 | 35 | 46 | |
| 13b | 25 | 36 | 47 | |

It has been seven months since Trusonic served Plaintiff with these requests for production. With entry of the Protective Order on May 18 (Doc. #46), Plaintiff has no excuse for failing to produce the documents requested. The documents requested are reasonably calculated to lead to the discovery of admissible evidence, relevant to Plaintiff's claims of infringement, alleged damages, and/or Trusonic's defenses of invalidity and unenforceability.

In a telephone conversation on June 25, 2007, the undersigned spoke with Plaintiff's trial counsel, Daniel J. Wood, Esq., and asked whether and, and if so when, Plaintiff intended to produce the documents requested. Mr. Wood advised that he would review the matter and reply the following day, June 26. To date, he has not done so. With the period for fact discovery coming to an end soon, Trusonic cannot afford to wait any longer for Plaintiff to decide whether, and when, it will produce requested documents.

## II.   RENEWAL OF MOTION TO COMPEL PLAINTIFF TO PRODUCE DOCUMENTS FROM THE FILES OF JOHN E. HOLMES, ESQ. AND ROYLANCE ABRAMS BERDO & GOODMAN

On January 26, 2007, Trusonic filed its original Motion to Compel Plaintiff to Produce Documents from the Files of John E. Holmes, Esq. and Roylance Abrams Berdo & Goodman ("Holmes Documents"), and Memorandum in Support. (Doc. #13.) That Motion was then briefed (*see* Plaintiff's Response in Opposition, Doc. #15; Trusonic's Reply, Doc. #16) and the Court heard argument on it in a conference with counsel in chambers on April 30, 2007.

On May 1, 2007, the Court issued an Order, confirming its oral order in the April 30 conference, that Plaintiff was to provide a privilege log with greater specificity than the one it had provided (Exhibit D – "*SMI* Log") in connection with withholding production of certain documents from the same universe of documents requested by the defendant in *Info-Hold, Inc. v. Sound Merchandising, Inc.*, No. 1:03cv925 in this Court, now dismissed. (Doc. #36.) The

Court's Order stated that it "will determine the merits of Defendant's Motion after reviewing

Plaintiff's privilege log [provided in this case] . . . . Thus, the Court defers ruling on Defendant's

Motion to Compel (doc. 13)." (*Id.*)  However, the Court added in a footnote:

> The Court holds that disclosure of the Holmes-Wood Letters did not waive any
> attorney-client privilege that might attach to the Withheld Documents . . . .

(*Id.*)

Thus, although the Court determined that Plaintiff's production of two letters written by

John Holmes, Esq. to Daniel Wood, Esq. (filed as exhibits to Trusonic's original Motion, and

Exhibit E hereto – "Holmes-Wood Letters") did not result in subject matter waiver of attorney-

client privilege, what remains unresolved are the following questions:

A)    Did Plaintiff's express declination to assert privilege, and allowing its President

and Rule 30(b)(6) designated witness to testify concerning the contents of the Holmes-Wood

Letters, *on two separate occasions*, amount to a subject matter waiver?

B)    Has Plaintiff sustained its burden of showing the bases for withholding production

of responsive, relevant documents?

C)    Does the crime-fraud exception to the attorney-client privilege apply, requiring at

least *in camera* inspection of all withheld documents, if not outright production of them?

These points are raised and argued in Trusonic's briefs at Docs. ## 13 and 16, and raised again

herein

### A.    Plaintiff Has Waived The Attorney-Client Privilege.

Trusonic has presented its arguments and evidentiary and legal support for this point in

its Memorandum in support of its original Motion (Doc. #13, Memorandum at pp. 12-18), and its

Reply (Doc. #16, at pp. 10-15).  Trusonic incorporates this matter herein by reference, and

reasserts it.  By expressly declining to assert attorney-client privilege on two separate occasions,

and by permitting its President and Rule 30(b)(6) designated witness to testify in a deposition concerning the contents of the Holmes-Wood Letters, Plaintiff waived the attorney-client privilege as to all subject matter they reflect.

**B.      Plaintiff Has Again Failed To Sustain Its Burden Of Showing Applicability Of Any Privilege.**

### 1.      *Again, Plaintiff Has Presented No Evidence.*

In response to the Court's Order of May 1 (Doc. #36), Plaintiff provided its "Info-Hold, Inc./Trusonic Privilege Log" (Exhibit F – "First *Trusonic* Log"). Review of this log reveals that it suffers from the same deficiencies as did the *SMI* Log – conclusory assertions of privilege with little detail and *no evidentiary support*. The original *SMI* Log listed approximately 136 Holmes Documents (some comprising multiple pages) that Plaintiff withheld from production in the *SMI* case, based on conclusory assertions of "attorney-client/work product privileges". (Exhibit D.) Plaintiff's First *Trusonic* Log lists approximately *239* Holmes Documents (some comprising multiple pages) Plaintiff is withholding in this case. By letter of May 22, 2007, Trusonic's counsel notified Plaintiff of the deficiencies and lack of support. (Exhibit H.)

Then, with no explanation, on June 25, 2007, the undersigned received an Email from Plaintiff's Trial Attorney attaching yet another version of a privilege log. (Exhibit G – "Second *Trusonic* Log".) This log did not address or resolve any of the issues discussed herein, and yet lists *293* Holmes Documents apparently being withheld. No explanation is given or apparent for why Plaintiff has withheld approximately 150 additional Holmes Documents in this case, from the same universe of responsive documents. And, while withholding 150 more documents here than it withheld in the *SMI* case, Plaintiff's explanation for withholding them has now inexplicably shifted from "attorney-client/work product privileges" to, with only one exception,

"Attorney-client privilege".  Thus, *less* legal justification is offered as a basis for withholding

*more* documents.  This casts doubt on the credibility of the conclusorily asserted privilege.

As previously noted by Trusonic, because it frustrates the search for truth, the attorney-

client privilege applies *only*

> (1) [w]here legal advice of any kind is sought (2) from a professional legal adviser
> in his capacity as such, (3) the communications relating to that purpose, (4) made
> in confidence, (5) by the client, (6) are at his instance permanently protected (7)
> from disclosure by himself or by the legal adviser, (8) unless the protection is
> waived.

*Reed v. Baxter*, 134 F.3d 351, 355-356 (6th Cir. 1998).  The party asserting the privilege bears the

burden of proving the facts necessary to establish its applicability.  *Labatt Brewing Co. v.*

*Molson Breweries*, 898 F. Supp. 471, 473 (E.D. Mich. 1995).  Plaintiff could have satisfied its

burden by presenting evidence "in any of the traditional ways in which proof is produced in

pretrial proceedings such as affidavits made on personal knowledge . . . ." *Toledo Edison Co. v.*

*G.A. Technologies, Inc.*, 847 F.2d 335, 338 (6th Cir. 1998).

Instead, in its First Log and again in its Second Log, Plaintiff has furnished only

conclusory assertions with little or no apparent factual support and no evidence whatsoever.  It is

apparent from Plaintiff's logs that many of the documents listed are not communications "by the

client":  Many entries show the "author" as a person not identified as either "JCH" (Joey C.

Hazenfield) or other apparent employee of Plaintiff.[1]  Some, not identified as authored by any

Info-Hold employees, have no identified recipients.  (With only one exception, *Plaintiff has*

*ceased relying upon attorney work product immunity as a basis to withhold documents*, so has

waived that immunity as a basis for withholding documents authored by attorneys.)  No

---

[1]     As with the *SMI* Log, Plaintiff's First and Second *Trusonic* Logs, Exhibits F and G, leave it
unclear who many of the parties sending and receiving these documents are, and who they were affiliated
with.

information or evidence is given as to who several attorneys appearing to be identified (by the suffix "Esq.") represented. Little information, and no evidence, are given as to what the allegedly privileged communications pertained to, nor is evidence or information given as to whether such communications were in confidence. Plaintiff has now been given *four opportunities and seven months*[2] to satisfy its burden of coming forward with details and evidence to support its assertions of privilege, and has failed in every respect to do so. Plaintiff should be given no further opportunities.

### 2. *Plaintiff Is Attempting To Obstruct and Frustrate Discovery.*

Additionally, comparison of Plaintiff's First *Trusonic* Log (Exhibit F) with the *SMI* Log (Exhibit D) reveals that, despite the facts that (1) Trusonic's requests for Holmes Documents in this case are substantially identical to defendant's requests for Holmes Documents in the *SMI* case, and (2) Trusonic has requested production of all documents produced by Plaintiff in the *SMI* case,[3] Plaintiff has renumbered all Holmes Documents, and either redacted or is withholding the numbered copies it produced in the *SMI* case. By letter of May 22, 2007, Trusonic's counsel advised of the inadequacies and requested that Plaintiff produce all documents including Holmes Documents that it produced (and *as it produced them*) in the *SMI* case, and provide any cross-reference Plaintiff has prepared between the Holmes Documents and

---

[2] As noted, Trusonic's discovery requests were served November 6, 2006 (Exhibit A). Plaintiff's opportunities to furnish evidence have existed in (1) providing its responses to Trusonic's requests for production; (2) responding in opposition (Doc. #15) to Trusonic's original Motion (Doc. #13); (3) providing its First Log; and (4) providing its Second Log.

[3] Because Plaintiff is asserting the very same patents in this case that it asserted in the SMI case (the '211 and '352 patents), Trusonic's Request No. 50 (Exhibit A) requests that Plaintiff produce "all documents Plaintiff produced in discovery in *Info-Hold, Inc. v. Sound Merchandising, Inc.*, No. 1:03-cv-000925".

numbered and withheld in this case and the same documents as numbered and withheld in the

*SMI* case. (Exhibit H.) Plaintiff's counsel replied:

> Regarding Info Hold's privilege log, I am aware of no requirement that any privileged documents in this case be made to correspond, by production number or any other scheme, to any documents from a previous case with a different defendant. Nor am I aware of any requirement that precisely the same documents be included. The privilege log for the SMI case was produced years ago[.]
>
> With regard to the privilege(s) asserted for each referenced document, my client believes that the explanations are sufficient. . . .

(Exhibit I.)

Given that Trusonic has requested production of all documents, including Holmes

Documents, Plaintiff produced in the *SMI* case, Plaintiff has no apparent reason or excuse for its

position, or its actions. This is relevant investigation, reasonably calculated to lead to the

discovery of admissible evidence. In order to have its assertions of privilege sustained, Plaintiff

should be obligated to promote understanding and clarity. Instead, as a result of Plaintiff's

evasive actions and obstructive posture, neither Trusonic nor the Court are able to compare

Plaintiff's assertions of privilege in the *SMI* case with those here, nor can we determine whether

Plaintiff has been forthcoming with production of documents *not* listed on a privilege log. Thus,

Trusonic believes that Plaintiff has renumbered the Holmes Documents and withheld, or

redacted, the numbered versions it produced in the *SMI* case, for the purpose of erasing the

document trail and frustrating cross-reference, review, comparison and analysis. This behavior

should not be condoned by allowing Plaintiff yet more opportunities and delay. Moreover, this

evasive behavior is circumstantial evidence that lends further support for Trusonic's allegations

of inequitable conduct, discussed below: Plaintiff is *behaving like a guilty party*.

## C.    The Crime-Fraud Exception to Attorney-Client Privilege Applies Here.

As discussed in detail and shown by evidence attached to Trusonic's original Motion (Doc. #13, at pp. 5-7) and Reply in support of its original Motion (Doc. #16, at pp. 4-8), there is ample basis in this case for a reasonable suspicion that persons associated with the filing and prosecution of the applications for the asserted patents have engaged in fraud on the Patent Office, rendering the patents unenforceable:

- Plaintiff (of whom the named inventor of the patents, Mr. Hazenfield, is owner and President) had used and/or sold "digital announcers" made by Nel-Tech Labs, Inc. in his business as early as 1991 (*see* Exhibit J, pp. 17-18 (answer to Interrogatory 12)).

- More than a year prior to December 31, 1992, Nel-Tech Labs, Inc. had offered for sale a digital announcer/on-hold message player product called the "Tel-A-Messenger" that enabled the user to record and store up to 16 messages, select from among them, and program them into or out of a playback sequence. (Exhibit K, article from *Teleconnect* magazine.)[4]

- Mr. Hazenfield filed the parent application for the '211 and '352 patents was filed December 31, 1992 (undisputed public record) (*see* Chart, Exhibit L).

- Plaintiff had used and/or sold the *Nel-Tech TeLink 700* in its business (*see* Exhibit B hereto, p. 13 (answer to Interrogatory No. 7)).

- The Nel-Tech TeLink 700 was on sale by Nel-Tech Labs more than a year prior to the date of application for the '374 patent, August 6, 1996 (*see* Exhibit M).[5]

- Mr. Hazenfield filed the application for the '374 patent August 6, 1996 (undisputed public record) (*see* Chart, Exhibit L).

---

[4]    We have since confirmed the availability and features of this product with admissible deposition testimony of Nel-Tech's President, Scott Stapleford. We have not yet received the transcript of that deposition from the stenographer. If interpreted broadly in accordance with Plaintiff's position on claim interpretation in this case, it renders several claims in, *e.g.*, the '211 patent invalid as lacking in novelty under 35 U.S.C. § 102(b). Thus, information concerning this product is material to the question of patentability.

[5]    We have confirmed the authenticity of these documents and correctness of this date with admissible deposition testimony of Nel-Tech's President, Scott Stapleford. We have not yet received the transcript of that deposition from the stenographer.

- In December of 1998, claims in the '374 patent were pending in the Patent Office (undisputed public record) (*see* Chart, Exhibit L).

- In December of 1998, claims in a parent application to the '211 and '352 patents were pending in the Patent Office (undisputed public record) (*see* Chart, Exhibit L).

- In December of 1998, Mr. Hazenfield and his attorneys had yet to file applications for the '211 and '352 patents (undisputed public record) (*see* Chart, Exhibit L).

- In December of 1998, Plaintiff and Mr. Holmes discussed another Nel-Tech product called the TeLink Flash 700. They expressly considered whether that product would infringe issued and pending claims in the '211/'352 patent family, and in the '374 patent application. *Mr. Holmes conveyed the opinion that it infringed claims in the '374 patent application.* (Exhibit E, pp IH09863-IH09865.) Nel-Tech's TeLink Flash 700 was a later version of the TeLink 700, and substantially the same product having substantially the same functions, the only significant difference being the type of memory chips used ("flash" vs. "DRAM").[6]

- If a device is covered by a patent claim, offering it for sale or selling it infringes the patent claim if the activity is commenced *after* the application filing date, *but renders the claim unpatentable and invalid* if commenced more than one year *before* the application filing date. 35 U.S.C. § 102(b). Thus, by Plaintiff's patent attorneys' own analysis, information concerning the "TeLink 700" was material to the question of patentability of the pending claims in the '374 patent application.

- Despite the patent applicant's and his attorneys' duties to disclose all information they know or should know of that is material to the question of patentability (37 CFR § 1.56; *Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp.*, 267 F.3d 1370, 1380-1381 (Fed. Cir. 2001)), Plaintiff and its attorneys disclosed no information whatsoever to the Patent Office concerning the "TeLink Flash 700", the "TeLink 700", or any other Nel-Tech products, in connection with applications for the '211, '352 and '374 patents. (Undisputed public record, the prosecution histories of these patents, reflects no disclosure, by way of formal Information Disclosure Statement or otherwise.)

The foregoing facts demonstrate a breach of the duty of candor and good faith, and a fraud on the Patent Office. Plaintiff cannot be heard to argue that there was no fraud because it

---

[6] We have confirmed these facts, corroborated by the documentary evidence in Exhibit M, by admissible deposition testimony of Nel-Tech's President, Scott Stapleford. We have not yet received the transcript of that deposition from the stenographer.

did not know about its duty. In the context of the patent applicant's duty of candor and good faith under 37 CFR §1.56(a), the inventor and his patent attorney are chargeable with knowledge of the law and each other's knowledge of the facts and the law. *See Novo Nordisk Phamaceuticals, Inc. v. Bio-Technology General Corp.*, 2005 U.S. App. LEXIS 21518, *39 (Fed. Cir. 2005). "In accordance with 37 C.F.R. § 1.56, inventors and their representatives are under a duty to disclose all material information known to them." *Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp.*, 267 F.3d 1370, 1380, n. 2 (Fed. Cir. 2001). Plaintiff cannot be heard to argue that there was no fraud because it did not know the TeLink 700 predated its '374 patent application, because once there is notice of the existence of potentially material prior art, duty of inquiry follows. If Plaintiff believed that an existing Nel-Tech product would be covered by its pending patent claims, *exercise of basic reasonable diligence would include determining when Nel-Tech first offered the product. See Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 375 F.3d 1341, 1360 (Fed. Cir. 2004) (finding fraud in part because the plaintiff's "behavior exhibited a state of mind so reckless as to the consequences that it is held to be the equivalent of intent[; s]uch circumstantial evidence is sufficient to establish the intent element of common-law fraud") (internal quotations omitted) *rev'd on other grounds by Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394 (2006); *Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp.*, 267 F.3d 1383 (Fed. Cir. 2001) ("'one should not be able to cultivate ignorance, or disregard numerous warnings that material information or prior art may exist, merely to avoid actual knowledge of that information or prior art'"), *quoting FMC Corp. v. Hennessey Industries, Inc.*, 836 F.2d 521, 526, n. 6 (Fed. Cir. 1987).

After the Court granted (over Plaintiff's opposition) Trusonic's Motion for Leave to Amend its Answer and Counterclaim to allege a defense based on these facts (Doc. #21),

Trusonic filed its First Amended Answer and Counterclaim (Doc. #37).  In that pleading,

Trusonic added a counterclaim as Count VIII.  Certain allegations in that Counterclaim, and

Plaintiff's corresponding answers, are as follows:

**COUNT VIII**

\* \* \*

62.    Prior to and as of December 30, 1998, persons associated with the filing and prosecution of the application for the '374 patent, including John E. Holmes, Esq., Stacy Longanecker, Esq., Daniel J. Wood, Esq., and Joey C. Hazenfield, knew of the existence of a product publicly sold by Nel-Tech called the TELink Flash 700.

[Plaintiff's answer: "Plaintiff asserts that the allegations contained in Paragraph 62 of Defendant's Amended Answer and Counterclaim call for a response that is protected by Attorney-Client privilege."]

\* \* \*

64.    As of December 30, 1998, persons associated with the filing and prosecution of the application for the '374 patent, Stacy Longanecker, Esq. and John E. Holmes, Esq., formed and conveyed the opinion to Daniel J. Wood, Esq. (another person associated with the filing and prosecution of the application for the '374 patent) that claims pending in the application for the '374 patent would, as written, cover the Nel-Tech TELink Flash 700.

[Plaintiff's answer:  "Plaintiff asserts that Paragraph 64 of Defendant's Amended Answer and Counterclaim call for a response that is protected by Attorney-Client privilege."]

\* \* \*

69.    The failure of persons associated with the filing and prosecution of the application for the '374 patent to disclose information material to the question of patentability of the claims in the '374 patent constitutes common law fraud on the PTO and inequitable conduct.

[Plaintiff did not give *any* answer.]

*See* Trusonic's First Amended Answer and Counterclaim (Doc. #37) and Plaintiff's Answer to

Defendant's First Amended Answer and Counterclaim (Doc. #48).

-12-

Plaintiff's assertion of attorney-client privilege in response to allegations of fact is

improper, and constitutes a technical admission of the allegations. Fed. R. Civ. P. 8 provides, for

a responsive pleading:

> **(b)  Defenses; Form of Denials.** A party shall state in short and plain
> terms the party's defenses to each claim asserted, and shall admit or deny the
> averments upon which the adverse party relies. . . . Denials shall fairly meet the
> substance of the averments denied.
>
> * * *
>
> **(d)  Effect of Failure to Deny.** Averments in a pleading to which a
> responsive pleading is required other than those as to the amount of damage, are
> admitted when not denied in the responsive pleading.

Fed. R. Civ. P. 8(b), (d). Thus, is not open to Plaintiff to refuse to answer allegations of fact in a

counterclaim by asserting attorney-client privilege.[7] By its refusal to answer, under Fed. R. Civ.

P. 8, technically Plaintiff has admitted the allegations. However, even if the Court were to grant

Plaintiff leeway as to this technicality, Plaintiff's refusal to answer these allegations supports the

inference that they are true.

Based on the foregoing, there is ample support for a reasonable suspicion that persons

associated with the filing and prosecution of the patents asserted in this case engaged in fraud on

the Patent office. In this circumstance, Plaintiff must be compelled to produce all withheld

Holmes Documents for *in camera* review (at the very least). *In re Antitrust Grand Jury*, 805

F.2d 155, 164, 166, 168 (6th Cir. 1986) ("[n]ot only do we believe *in camera* review is mandated

to determine the scope of the order, *in camera* review of the documents could have assisted the

---

[7]      Moreover, it is not apparent *how* attorney-client privilege could properly be asserted in response
to these allegations even if its assertion would be a permitted form of response under Fed. R. Civ. P. 8.
The allegations say nothing about communications between attorney and client. They only aver
knowledge on the part of persons associated with the filing and prosecution of the application for the '374
patent. *See* 37 CFR § 1.56 (a) ("[e]ach individual associated with the filing and prosecution of a patent
application has a duty of candor and good faith in dealing with the [Patent] Office, which includes a duty
to disclose to the Office all information known to that individual to be material to patentability . . . .")

court in determining whether a *prima facie* violation had been made"); *TRW Financial Services, Inc. v. Unisys, Corp.*, 31 U.S.P.Q.2d 1065, 1069 (E.D. Mich. 1993) ("[i]n this Circuit, a district court may look to the purportedly privileged documents themselves to determine whether a prima facie showing of a crime or fraud has been made").

## III.   CONCLUSION

For the reasons discussed above and under the authorities and evidence cited, Trusonic requests that the Court issue an Order:

1)      compelling Plaintiff to produce immediately to Trusonic documents in response to Trusonic's requests for production identified herein at p. 2, and

2)      compelling Plaintiff to immediately produce all documents from the files of John E. Holmes, Esq. and Roylance Abrams Berdo & Goodman, relating to:

U.S. Patent Application Serial No. 07/999,592 ('592 application);

U.S. Patent No. 5,870,461 ("'461 patent");

U.S. Patent No. 5,920,616 ("'616 patent");

U.S. Patent No. 6,272,211 ("'211 patent");

U.S. Patent No. 6,687,352 ("'352 patent");

U.S. Patent No. 5,991,374; and

the applications for the above-listed patents,

to Trusonic, or alternatively, to the Court to *in camera* review in connection with identifying additional evidence that persons associated with the filing and application of the '211, '352 and '364 patents have engaged in inequitable conduct and fraud on the United States Patent and Trademark Office, by failing to disclose evidence of known prior art potentially material to patentability of the claims in those patents.

Respectfully submitted,


/s/ William E. Gallagher
William E. Gallagher
(Ohio Reg. No. 65474)
FROST BROWN TODD LLC
201 East Fifth Street
2200 PNC Center
Cincinnati, Ohio 45202
Telephone:    (513) 651-6800
Facsimile:    (513) 651-6981
Trial Attorney for Defendant


Of Counsel:

William S. Morriss
FROST BROWN TODD LLC
201 East Fifth Street
2200 PNC Center
Cincinnati, Ohio 45202
Telephone:    (513) 651-6800
Facsimile:    (513) 651-6981

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing DEFENDANT'S MOTION
TO COMPEL PLAINTIFF TO PRODUCE DOCUMENTS; RENEWAL OF MOTION TO
COMPEL PLAINTIFF TO PRODUCE DOCUMENTS FROM THE FILES OF JOHN E.
HOLMES, ESQ. AND ROYLANCE ABRAMS BERDO & GOODMAN; AND
MEMORANDUM IN SUPPORT has been served 29th day of June, 2007 by E-Mail upon the
following:  Daniel Joseph Wood, Esq., 4120 Airport Road, Cincinnati, OH  45226; E-mail
danw@infohold.com, and Theodore R. Remaklus, Esq., Wood, Herron & Evans, L.L.P., 2700
Carew Tower, 441 Vine Street, Cincinnati, OH  45202; E-mail tremaklus@whepatent.com.


                                                    /s/  William E. Gallagher

-16-