IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **Info-Hold, Inc.**, | : | Case No. 1:06cv543 |
| | : | |
| Plaintiff, | : | District Judge Susan J. Dlott |
| v. | : | |
| | : | ORDER GRANTING DEFENDANT'S |
| **Trusonic, Inc.**, | : | MOTIONS TO COMPEL |
| | : | |
| Defendant. | : | |

This matter is before the Court on Defendant's Motion to Compel Plaintiff to Produce Documents from the Files of John E. Holmes, Esq. and Roylance Abrams Berdo & Goodman (doc. 13) and Defendant's Motion to Compel Plaintiff to Produce Documents; Renewal of Motion to Compel Plaintiff to Produce Documents from the Files of John E. Holmes, Esq. and Roylance Abrams Berdo & Goodman (doc. 62).  For the reasons that follow, the Court GRANTS Defendant's motions.

**I.     Background**

This is a patent infringement action in which Info-Hold, Inc. claims that Trusonic, Inc. has infringed upon its patents numbered '211, '352, and '374.  Trusonic in its counterclaim alleges that Info-Hold's patents are invalid and/or unenforceable because Info-Hold made material misrepresentations to the U.S. Patent & Trademark Office during the prosecution of those patents.  (Doc. 37 at 5-13.)

Trusonic in this case has twice requested the involvement of the Court to resolve a dispute between the parties over whether certain documents should be produced in discovery. First, Trusonic filed a Motion to Compel Plaintiff to Produce Documents from the Files of John

E. Holmes, Esq. and Roylance Abrams Berdo & Goodman, the patent lawyer and his firm who prosecuted patent applications for Info-Hold and the named patent inventor, Joey C. Hazenfield. Specifically, Trusonic requested in discovery all documents from the files of John E. Holmes, Esq. and his firm relating to the '592 application, the '461 patent, the '616 patent, the '211 patent, the '352 patent, and the applications for those patents (hereafter "the Holmes Files"). (Doc. 13 at 1.)

The parties appeared before the Court for a hearing on Defendant's Motion to Compel. At that hearing, the Court ordered Info-Hold to provide Trusonic with a privilege log drafted with greater specificity. On May 1, 2007, the Court issued an Order deferring its decision on the motion to compel (doc. 13) pending a review of the more detailed privilege log. (Doc. 36.) The Court ruled that Plaintiff's disclosure of two letters containing attorney-client communications (the "Holmes-Wood Letters") during discovery in prior litigation involving a different defendant, Sound Merchandising, Inc. ("SMI"), did *not* operate as an express waiver of attorney-client privilege in the instant lawsuit as to "all communications concerning the meaning and scope of the claims in the four subject patents. . . ." (Doc. 36 n. 1.)

Trusonic then filed another motion to compel, renewing its earlier motion (doc. 13) and additionally requesting the Court to compel Info-Hold to produce documents in response to certain of Trusonic's requests for production.[1] (Doc. 62 at 4.) The Court conducted a hearing on Trusonic's second motion to compel and ordered Info-Hold to provide to the Court all the documents identified in its updated privilege log, the document attached to Info-Hold's

---

[1] Trusonic claimed that Info-Hold did not produce any documents in response to forty-seven requests for production contained in Trusonic's discovery request: 2c, 2d, 3d, 4c, 5d, 6c, 6d, 6e, 9c, 10b, 13b, 14b, 15b, 16c, 17, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 52, 54, and 55.

2

Response in Opposition to Defendant's Motion to Compel as Exhibit J (doc. 68) (hereafter "the Privilege Log"). The Court stated that it would review the documents for the purpose of determining whether Info-Hold's asserted privileges were valid; it did not render a judgment as to whether Trusonic had made a prima facie showing of a crime or fraud by Info-Hold such that an exception to the attorney-client privilege would apply. (Doc. 82, T.P. at 44.) Info-Hold subsequently provided the Court with 1020 pages of documents from the Holmes Files. The Court has reviewed the documents for the purpose of ascertaining whether any are protected by privilege.[2]

The Court is now able to rule on Trusonic's Motion to Compel Plaintiff to Produce Documents from the Files of John E. Holmes, Esq. and Roylance Abrams Berdo & Goodman (doc. 13). With respect to Defendant's Motion to Compel Plaintiff to Produce Documents; Renewal of Motion to Compel Plaintiff to Produce Documents from the Files of John E. Holmes, Esq. and Roylance Abrams Berdo & Goodman (doc. 62), Trusonic has waived without prejudice all issues except those pertaining to the production of the files of John E. Holmes, Esq. and Roylance Abrams Berdo & Goodman. (Doc. 82, T.P. at 42-43.) Thus, that motion is moot but for the following issues: (1) Whether Info-Hold has sustained its burden of showing that the Holmes Files are protected by the attorney-client privilege; (2) whether Plaintiff's declination to assert privilege and allowance of its Rule 30(b)(6) designated witness to testify concerning the Holmes-Wood letters during a deposition noticed in the *Sound Merchandising* lawsuit amounted to a subject-matter waiver of attorney-client privilege in this lawsuit, and (3) whether the crime-

---

[2] Upon discovering that the produced documents did not accurately correlate with the document descriptions listed in the Privilege Log, the Court ordered Info-Hold to provide the Court and opposing counsel with an updated privilege log. (Doc. 83.) Info-Hold complied, providing the Court with an updated privilege log ("Updated Privilege Log"). (Doc. 84-2.)

3

fraud exception to the attorney-client privilege applies to the withheld documents, thus necessitating their production.

**II.    Discussion**

    **A.    Choice of Law**[3]

Federal Circuit law governs discovery disputes that concern issues of substantive patent law. *See In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 803-04 (Fed. Cir. 2000) (holding that Federal Circuit law applies not only to "issues of substantive patent law" but also "a procedural issue . . . if the issue pertains to patent law, if it bears an essential relationship to matters committed to our exclusive [jurisdiction] by statute, or if it clearly implicates the jurisprudential responsibilities of this court in a field within its exclusive jurisdiction." (quoting *Midwest Indus., Inc. v. Karavan*, 175 F.3d 1356, 1359 (Fed. Cir. 1999))); *see also McCook Metals L.L.C. v. Alcoa Inc.*, 192 F.R.D. 242, 250-51 (N.D. Ill. 2000); *Astra Aktiebolag v. Andrx Pharmaceuticals, Inc.*, 208 F.R.D. 92, 97 (S.D.N.Y. 2002); *Martin Marietta Materials, Inc. v. Bedford Reinforced Plastics, Inc.*, 227 F.R.D. 382, 391 (W.D. Pa. 2005); *In re EchoStar Commun. Corp.*, 448 F.3d 1294, 1298 (Fed. Cir. 2006); *Rowe Int'l Corp. v. Ecast,* Inc., 241 F.R.D. 296, 300 (N.D. Ill. 2007). Therefore, the Court must determine which law applies to the issues presented by Trusonic's motion to compel because application of one circuit's law or the other may result in a different outcome.

    **B.    Attorney-Client Privilege**

---

[3] Despite the importance of choice of law to the issues presented in Defendant's motions to compel, neither party, either in their briefing or during oral argument, discussed the applicability of Federal Circuit law to the issues. Nonetheless, the Court deems it an issue worthy of discussion and has undertaken to analyze the propriety of applying Federal versus Sixth Circuit law to the issues presented.

Trusonic asserts that the majority of the documents listed in the Privilege Log are not entitled to the attorney-client privilege because they are not communications "by the client," relying on *Reed v. Baxter*, 134 F.3d 351 (6th Cir. 1998).[4] However, *Reed v. Baxter* is not controlling. As stated by Trusonic, "communications between Plaintiff and its patent attorneys relating to these patent applications and ['211, '352, '616, and '461] patents are directly relevant to Trusonic's defense of inequitable conduct." (Doc. 13 at 2.) Because the defense of inequitable conduct before the Patent Office is an issue that "bears an essential relationship[]" to substantive patent law, Federal Circuit law, not Sixth Circuit law, applies. *In re Spalding*, 203 F.3d at 803.

The Supreme Court has stated that the privilege "exists to protect *not only the giving of professional advice* to those who can act on it, but also the giving of information to the lawyer to enable him to give sound and informed advice." *Upjohn Co. v. United States*, 449 U.S. 383, 390 (1981) (emphasis added). In other words, the law of privilege does not distinguish between communications made *by a client* and those made *by an attorney* so long as the communications are for the purpose of securing legal advice. *See Genetech, Inc. v. United States Int'l Trade Comm'n,* 122 F.3d 1409, 1415 (Fed. Cir. 1997) ("The attorney-client privilege protects the confidentiality of communications between attorney and client made for the purpose of obtaining legal advice."); *see also American Standard Inc. v. Pfizer Inc.*, 828 F.2d 734, 745 (Fed. Cir.

---

[4] As stated by the Sixth Circuit in *Reed*,
> (1) [w]here legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence, (5) by the client, (6) are at his instance permanently protected, (7) from disclosure by himself or by the legal adviser, (8) unless the protection is waived.

134 F.3d at 355-56.

1987) (holding that the privilege applies "to lawyer-to-client communications that reveal, directly or indirectly, the substance of a confidential communication by the client"). Thus, the fact that many of the documents in the Holmes Files are communications *from* counsel *to* the client does not automatically exclude them from the privilege.

The next question is whether the withheld documents in the Holmes Files contain communications "for the purpose of obtaining legal advice." *Genetech*, 122 F.3d at 1415. The Federal Circuit has adopted the reasoning of *Knogo Corp. v. United States*, 213 U.S.P.Q. 936 (Ct. Cl. 1980), which rejected the characterization of patent attorneys as mere "conduits" to the Patent Office and held that nearly all communication between a client and his patent attorney, even technical information, is privileged. *In re Spalding*, 203 F.3d at 806. The Court's review of the Updated Privilege Log reveals attorney notes and correspondence pertaining to patent design, prosecution, enforcement, and continuation applications. Also in the Files are notes and correspondence regarding licensing, royalties, and competition.

The Court concludes that, with few exceptions, the Holmes Files are protected by the attorney-client privilege because they contain information given by the client–either Mr. Hazenfield or Mr. Wood[5]–to the patent attorney for the purpose of patentability determination and invention protection, as well as the corresponding advice to the client from the attorney. *See Sperry v. Florida*, 373 U.S. 379, 383 (1963) ("[T]he preparation and prosecution of patent

---

[5] The Court notes that, for the purposes of the attorney-client privilege, one person can be both attorney and client for different communications. *See*, *e.g.*, *Burlington Ind. v. Exxon Corp.*, 65 F.R.D. 26, 37 (D. Md. 1974) ("[I]it is possible for 'in-house' counsel to be the sole counsel with respect to certain advisory communications, and co-counsel with outside attorneys for other communications. It is also possible for 'in-house' counsel, as a member of the corporate control group, to personify the corporate client in seeking legal advice from 'outside' counsel.") In this case, it appears that Mr. Wood, Info-Hold's general counsel, acted primarily as a client in his communications with Mr. Holmes.

applications for others constitutes the practice of law.") As was the case in *In re Spalding*, the fact that a portion of the records list prior art or technical information does not invalidate the privilege: "It is enough that the overall tenor of the document indicates that it is a request for legal advice or services." *In re Spalding*, 203 F.3d at 806. Thus, to the extent the Updated Privilege Log describes documents that are communications (or that memorialize communications[6]) made in confidence between Info-Hold and its legal counsel for the purpose of seeking legal advice, they are protected from disclosure unless the protection is waived.

Info-Hold has sustained its burden of demonstrating that the majority of the documents described in the Updated Privilege Log are entitled to attorney-client privilege. However, there are exceptions. Some of the documents, described in the Updated Privilege Log as "[n]otes reflecting legal questions" or "[a]ttorney notes," do not constitute or memorialize communication either by or to the client and are thus not within the attorney-client privilege. These documents, IH0050-51, IH0054, IH0055-57, IH0206, IH0231, IH0349, IH0350-354, IH0701, and IH0825-844, must be produced to the Defendant.[7]

### C. Work Product Privilege

Info-Hold asserts attorney work product privilege for one document described in the Updated Privilege Log: document numbered IH0038. For the same reason that Federal Circuit law applies to the determination of attorney-client privilege afforded to the Holmes Files, it

---

[6] Documents that memorialize oral communications to the client are protected by attorney-client privilege to the same extent as written communications. *See*, *e.g.*, *SPX Corp. v. Bartec USA, LLC*, 247 F.R.D. 516, 526 (E.D. Mich. 2008).

[7] These documents could conceivably qualify as attorney work product if prepared in anticipation of litigation. *See Upjohn Co. v. U.S.*, 449 U.S. 383, 397 (1981). However, Info-Hold does not assert work product privilege for any of these documents.

applies to the determination of work product privilege.

The doctrine of work product privilege, as set forth in Federal Rule of Civil Procedure 26(b)(3), protects from discovery documents and tangible things prepared in anticipation of litigation by or for a party or by or for that party's representative.  "The work product privilege protects the attorney's thought processes and legal recommendations, which also may bear directly on the suit in question." *Zenith Radio Corp. v. U.S.*, 764 F.2d 1577, 1580 (Fed. Cir. 1985).  The Court has found no clear guidance from the Federal Circuit whether patent prosecution files are considered work product.  However, other federal courts have concluded that an attorney's thought processes with respect to the preparation of a patent application are too distant in time to be considered as having been made "in anticipation" of litigation.

> Generally, work performed by an attorney to prepare and prosecute a patent application does not fall within the parameters of the work-product protection, *see, e.g., McNeil-PPC, Inc. v. Procter & Gamble Co.,* 136 F.R.D. 666, 671 (D. Colo.1991); *Detection Sys., Inc. v. Pittway Corp.,* 96 F.R.D. 152, 155 (W.D.N.Y.1982) (quoting *Choat v. Rome Indus. Inc.,* 462 F.Supp. 728, 732 (N.D. Gal.1978) and *Hercules v. Exxon Corp.,* 434 F.Supp. 136, 152 (D. Del.1977)), since the prosecution of patent application is a non-adversarial, *ex parte* proceeding.

*Application of Minebea Co., Ltd.*, 143 F.R.D. 494, 499 (S.D.N.Y.,1992).

Despite asserting work product privilege as the basis for withholding one of the documents in the Holmes Files, Info-Hold did not address work product privilege in its briefing. Because Info-Hold has made no effort to demonstrate that document Bates number IH0038 was prepared in anticipation of litigation, it has failed to sustain its burden and the document must be produced to Trusonic.

**D.     Waiver**

That the majority of the documents in the Holmes Files are protected by attorney-client privilege does not end the inquiry into whether the documents must be turned over to Defendant. Defendant argues that Plaintiff waived the attorney-client privilege with respect to communications between Mr. Holmes and Info-Hold on the issue of the meaning and coverage of the claims in Patent numbers '461, '616, and '374 and ongoing patent claiming strategy to cover devices sold by others in the market. The argument for waiver stems from the fact that Info-Hold President Mr. Hazenfield testified in a deposition concerning letters between patent attorney Mr. Holmes and Info-Hold general counsel Mr. Wood. The issue of whether allowing a Rule 30(b) witness to testify concerning a document constitutes a waiver of privilege does not pertain to patent law and, thus, is governed by regional circuit law. *See In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 803-04 (Fed. Cir. 2000).

On September 29, 2005, in an unrelated patent-infringement lawsuit, counsel for the defendant in that case, SMI, deposed Mr. Hazenfield. Mr. Hazenfield was represented by Mr. Wood during the deposition. SMI's counsel marked as deposition exhibits two letters, from Mr. Holmes to Mr. Wood, that Info-Hold had produced to SMI during discovery (hereinafter the "Holmes-Wood letters"). Although Mr. Wood later asserted that Info-Hold's disclosure of the Holmes-Wood letters had been inadvertent, he allowed Mr. Hazenfield to testify concerning the letters at the deposition. In fact, on two separate occasions during Mr. Hazenfield's deposition, Mr. Wood expressly stated that he was *not* asserting privilege and told Mr. Hazenfield to answer defense counsel's questions concerning the letters. (*See* Hazenfield dep., Sept. 29, 2005, at 282-83, 286-87, attached as Ex. C to doc. 13.)

The Holmes-Wood letters, dated December 30, 1998 and December 3, 1999, concern patent applications that evolved into patents that are the subject of this suit.  The 1998 Holmes-Wood letter summarizes a December 19, 1998 meeting and discusses whether some types of remotely downloaded digital announcers might be covered by claims in the patent application.  The letter specifically references two competing products: the Premier DDF-2800 and the Nel-Tech TELink Flash digital announcers.  The 1999 Holmes-Wood letter summarizes a telephone conversation of December 2 and discusses whether allowed claims in the applications are worded in such a way as to cover remotely downloaded digital announcers.  In his deposition, Mr. Hazenfield discussed the letters and stated that, in 1999, he and his counsel "were discussing broader coverage of the patents and what broader coverage might be available in the open marketplace."  (Hazenfield dep. 282-86.)

> As a general rule, the "attorney-client privilege is waived by voluntary disclosure of private communications by an individual or corporation to third parties.  *See In re Grand Jury Proceedings October 12, 2995*, 78 F.3d 251, 254 (6th Cir. 1996).  In addition, a client may waive the privilege by conduct which implies a waiver of the privilege or a consent to disclosure." *[U.S. v.] Dakota*, 197 F.3d at 825 [6th Cir. 2000] (*citing In re von Bulow*, 828 F.2d 94, 104 92d Cir. 1987)).

*Tennessee Laborers Health & Welfare Fund v. Columbia/HCA Healthcare Corp.*, 293 F.3d 289, 294 (6th Cir. 2002).  By producing the Holmes-Wood letters and then by allowing Mr. Hazenfield to discuss their contents in a deposition, Info-Hold has knowingly waived any privilege with respect to the letters.

The Court now must determine the scope of Info-Hold's waiver.  "The appropriate inquiry to determine the scope of the waiver is whether the client's disclosure involves the same subject matter as the information sought." *In re OM Securities Litigation*, 226 F.R.D. 579, 592

(N.D. Ohio 2005) (citing *U.S. v. Collis,* 128 F.3d 313, 320 (6th Cir. 1997)).  The subject matter of the Holmes-Wood letters is Info-Hold's patent claiming strategy to cover digital announcer devices sold by others in the market.  Thus, Info-Hold has waived the privilege associated with communications in the Holmes Files on that same subject matter.

The Court, based on its in camera review of the Holmes Files, finds that the following documents pertain to Info-Hold's strategy for determining whether its patent claims cover digital announcers sold by others in the market: IH0003-6, IH0031, IH0034-37, IH0048, IH0049, IH0052, IH0171-173, IH0177-179, IH0194, IH0196, IH0197, IH0198-199, IH0201-202, IH0203-205, IH0207-212, IH0213-217, IH0218, IH0269-271, IH0289-291, IH0521-525, IH0610-612, IH0619-620, IH0627-637, IH0641-642, IH643-645, IH0671-676, IH0697-699, IH0702-703, and IH0956-958.  Because Info-Hold has waived any privilege attached to these documents, it must produce them to Defendant.  Further, Info-Hold must produce to the Defendant any other documents in the Holmes Files on the subject of Info-Hold's patent claiming strategy to cover digital announcers sold by others in the market but not identified as such by the Court in its in camera review.

### E.     Crime-Fraud Exception

Trusonic's third and final argument in favor of compelling the disclosure of the documents in the Holmes Files is that the crime-fraud exception to the attorney-client privilege applies.  Specifically, Trusonic alleges that Mr. Hazenfield is chargeable with inequitable conduct in the prosecution of his patents because he made material, inaccurate, and misleading statements to the Patent Office and that he omitted disclosing to the Patent Office material

11

information known to him concerning the nature and manner of operation of prior art "digital announcers."[8]

Whether a patent holder engaged in inequitable conduct before the Patent Office, and whether such conduct is sufficient to abrogate any attorney-client privilege, are questions that concern substantive patent law and, thus, are governed by Federal Circuit law. *See In re Spalding*, 203 F.3d at 806-07; *see also Martin Marietta Materials*, 227 F.R.D. at 391. "To invoke the crime-fraud exception, a party challenging the attorney-client privilege must make a *prima facie* showing that the communication was made 'in furtherance of' a crime or fraud." *Id*. at 807 (citation omitted). To establish a *prima facie* case of fraud on the Patent Office, defendants must establish (1) a misrepresentation of material fact; (2) the falsity of that representation; (3) the intent to deceive or, at least, a state of mind so reckless as to the consequences that it is held to be the equivalent of intent; (4) a justifiable reliance upon the misrepresentation by the Patent Office; and (5) injury to the Patent Office. *Id*.

Trusonic lists in its motion several fact that it claims create a reasonable suspicion that persons associated with the filing and prosecution of the applications for the asserted patents have engaged in fraud on the Patent Office. (Doc. 62 at 9-10.) For example, Mr. Hazenfield used digital announcers made by Nel-Tech labs in his business as early as 1991, more than a year before Mr. Hazenfield filed the parent application for the '211 and '352 patents. In December 1998, Plaintiff and Mr. Holmes discussed another Nel-Tech product called the TELink Flash 700, considering whether it would infringe issued and pending claims in the '211/'352 patent

---

[8] The Code of Federal Regulations imposes a duty of candor and good faith upon the patent applicant and his attorney with respect to the Patent Office in prosecution of a patent application. 37 C.F.R. § 1.56(a). Inequitable conduct by the applicant during prosecution renders any patent claims allowed from the application unenforceable.

family. However, despite this information, Plaintiff never disclosed any information whatsoever to the Patent Office concerning the TELink Flash 700 or any other Nel-Tech products.

Although the Court declines to specifically decide the issue at this time, it is possible that Info-Hold's apparent failure to disclose the Nel-Tech products to the Patent Office may constitute inequitable conduct. Inequitable conduct, however, does not trigger the crime-fraud exception to the attorney-client privilege. *Rowe Int'l Corp. v. Ecast, Inc.*, 241 F.R.D. 296, 303 (N.D. Ill. 2007) (citing *Spalding*, 203 F.3d at 807); *see also Abbott Laboratories v. Andrx Pharmaceuticals, Inc.*, 241 F.R.D. 480, 487 (N.D. Ill. 2007); *Martin Marietta Materials, Inc. v. Bedford Reinforced Plastics, Inc.*, 227 F.R.D. 382, 395-96 (W.D. Pa. 2005) (discussing that inequitable conduct is a lesser offense than common law fraud).

A claim of fraud on the Patent Office is generally referred to as *Walker Process* fraud, after *Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 177 (1965). *Walker Process* fraud requires proof that traditional common law fraud was committed on the PTO. *Abbott Laboratories*, 241 F.R.D. at 487. "A finding of fraud 'requires higher threshold showings of both intent and materiality than does a finding of inequitable conduct . . . [I]t must be based on independent and clear evidence of deceptive intent together with a clear showing of reliance [by the PTO].'" *Rowe Int'l Corp.*, 241 F.R.D. at 303 (citing *Spalding*, 203 F.3d at 807). The evidentiary showing required to make a *prima facie* showing of fraud in order to establish the crime-fraud exception to the attorney-client privilege is thus greater than the showing required to make a *prima facie* showing of inequitable conduct. *Abbott Laboratories*, 241 F.R.D. at 487-88.

Trusonic has not presented the Court with evidence sufficient to demonstrate a *prima facie* showing that Info-Hold made communications in furtherance of a fraud on the Patent Office.  Thus, the Court concludes that the crime-fraud exception to attorney-client privilege does not apply to the Holmes Files.

## III. Conclusion

For the foregoing reasons, Defendant's Motion to Compel Plaintiff to Produce Documents from the Files of John E. Holmes and Roylance Abrams Berdo & Goodman (doc. 13) and Defendant's Motion to Compel Plaintiff to Produce Documents; Renewal of Motion to Compel Plaintiff to Produce Documents From the Files of John E. Holmes (doc. 62) are hereby GRANTED to the extent that Info-Hold must produce the following documents:  IH0003-6, IH0031, IH0034-37, IH0038, IH0048, IH0049, IH0050-51, IH0052, IH0054, IH0055-57, IH0171-173, IH0177-179, IH0194, IH0196, IH0197, IH0198-199, IH0201-202, IH0203-205, IH0206, IH0207-212, IH0213-217, IH0218, IH0231, IH0269-271, IH0289-291, IH0349, IH0350-354, IH0521-525, IH0610-612, IH0619-620, IH0627-637, IH0641-642, IH643-645, IH0671-676, IH0697-699, IH0701, IH0702-703, IH0825-844, and IH0956-958.

Because Trusonic's counsel waived without prejudice all issues raised in the latter motion (doc. 62) except those pertaining to the production of the files of John E. Holmes, Esq. and Roylance Abrams Berdo & Goodman, this order resolves all discovery issues pending before the Court.

IT IS SO ORDERED.

       ___s/Susan J. Dlott_____
       Susan J. Dlott
       United States District Judge